## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BENNETT INTERNATIONAL GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| vs. | ) ) | FILE NO. 1:21-cv-02190-MLB |
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Allied World Specialty Insurance Company ("Allied World"),

pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves the Court

to dismiss Plaintiff's Complaint with prejudice because Plaintiff seeks insurance

benefits for alleged loss to personal property in the open caused by rain and snow,

which is expressly excluded under the subject insurance contract agreed to by the

parties.  Because there are no benefits for this type of loss under the contract,

Plaintiff cannot prevail on its breach of contract claim.  Because there is no

coverage for the alleged loss under the contract, Allied World cannot be held liable

for bad faith denial of insurance benefits for the alleged loss. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.[1]

## FACTUAL BACKGROUND

On February 7, 2020, heavy rain and snow caused the Umatilla River behind the Plaintiff's property at 4620 NW McKennon Road, Pendleton, Oregon (the "Property") to flood, causing:

- "damage to 25 travel trailers" at the Property; and

- damage to "two temporary office buildings" at the Property including "a 40 x 12 mobile office and the second a 32 x 12 mobile officer."

Complaint, Dkt 1-1 ¶ 13; **Exhibit A**[2] (Feb. 7, 2020 "Property Loss Notice") at 1; **Exhibit B** (May 21, 2020 Disclaimer Letter) at 1; **Exhibit C** (Feb. 24, 2020

---

[1] Allied World's motion is based on Plaintiff's allegations as set forth in its Complaint and the documents referenced therein. Allied World does not waive, but specifically reserves, the right to assert other provisions from the subject insurance contract in the future.

[2] "Exhibit" refers to one of the documents attached to this motion. The Court may consider the Property Loss Notice and the February 7, 2020 picture for this motion because the documents are part of the claim Plaintiff submitted to Allied World, which is incorporated into Plaintiff's Complaint by reference and is central to Plaintiffs' claim. *Rudd v. Suburban Lodges of Am., Inc.*, 67 F.Supp.2d 1366, 1369 n.3 (N.D. Ga. 1999) (noting that when the plaintiff refers to certain documents in the complaint and those documents are central to plaintiff's claim, the court may rely on them for purposes of evaluating motion to dismiss). Likewise, the denial letter and appraisal report are also incorporated by reference in Plaintiff's complaint and central to its claim and thus can be relied upon by the court.

Appraisal Report) at 4; NOAA, Storm Information for Pendleton, Oregon.[3]  As

described in the appraisal relied on by Plaintiff in the Complaint, the Property

> is located at Premises #23 which has an address of 4620 McKennon
> Rd., Pendleton, OR 97801.  The property consists of a 5-acre lot,
> fenced on 3 sides and open the rear which is adjacent to the Umatilla
> River.  The property has two temporary office buildings on site one a
> 40 x 12 mobile office and the second a 32 x 12 mobile office.  There
> are currently 3 travel trailer units that are not inventory stored at the
> location.

**Exhibit C** (Appraisal Report) at 4.  Also, as reflected in the photos taken by the

appraiser, the "two temporary office buildings" described above could be

colloquially referred to as "manufactured office space":



---

[3] *Available at* https://www.ncdc.noaa.gov/stormevents/eventdetails.jsp?id=871973.
The Court may take judicial notice of the contents of this federal agency's website
because its "accuracy cannot reasonably be questioned."  Fed. R. Evid. 201; *see
also Stafford v. Grifols Int'l S.S.*, No. 1:18-CV-321-SCJ, 2019 WL 3521957, at *2
n.4 (N.D. Ga. Feb. 25, 2019) (taking judicial notice of website of U.S. Department
of State); *Kareem of the Family Hodge v. Texas Office of the Attorney General*,
No. 1:18-CV-5208-AT, 2018 WL 10733618, at *2 (taking judicial notice of Office
of Attorney General of Texas website); *Gardner v. Starkist Co.*, 418 F. Supp. 3d
443, 452 n.2 (N.D. Cal. 2019) (taking judicial notice of two NOAA webpages).

**Exhibit D** (Appraisal Photos) at 106, 111.   Apart from these two manufactured office spaces,

> The *remainder of the property is used for open storage of travel trailer units* that have been picked up from the manufacture and are pending transportation to the dealership that purchased the units.

**Exhibit C** (Appraisal Report) at 4 (italics added).   Plaintiff's picture of the damaged travel trailers that it submitted to Allied World as part of its claim reflects that the travel trailers were out in the open at the time of the flooding:



**Exhibit E.**   The travel trailers themselves are recreational vehicles ("RVs") that do not self-propel but are rather towed by a truck or other self-propelled vehicle:



**Exhibit D** (Appraisal Photos) at 8.  The interior of the RVs reflects furniture for lounging and various amenities, including television:



*Id.* at 10.

Because of the loss to the RVs, "Bennett filed a claim with Allied World under the terms of the Policy."  Complaint, DE 1-1 ¶ 17.  "Allied World had the travel trailers inspected and appraised, determining that they were all a total loss and appraising the value of the travel trailers to be $481,387.00."  *Id.* ¶ 18.  Subsequently, Allied World denied Bennett's insurance claim.  *Id.* ¶¶ 21, 23.

The contract at issue was entered into between Allied World and Plaintiff (the "Contract").  DE 1-1 at Page 12 of 130.  In the Contract, the parties agreed that "in return for the payment of the premium, and subject to all the terms of this policy, we [Allied World] agree with you [Plaintiff] to provide the insurance as stated in this policy."  *Id.* (capital letters changed to lower case and bold font removed).

Plaintiff seeks to recover money under the Contract – more specifically, under the "form titled Commercial Output Program Property Coverage Part," hereinafter referred to as the "Commercial Output Program" – "which provides coverage for Business Personal Property." Complaint, DE 1-1 ¶ 8. Plaintiff claims that the RVs are "covered business personal property" under the Commercial Output Program, and as such damage to the RVs constitute loss under the Contract, entitling Plaintiff to certain monetary benefits. *Id.* ¶¶ 9, 25.

The Commercial Output Program sets forth the parties' agreement with respect to that section of their Contract:

> In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Commercial Output Program. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.
>
> Endorsements and schedules may also apply. They are identified on the "schedule of coverages".
>
> Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

Contract, DE 1-1 at Page 52 of 130.

In its "**PROPERTY COVERED**" section, *Id.* at Page 57 of 130, the Commercial Output Program states in pertinent part as follows:

-6-

"We" [Allied World] cover the following property *unless the property is excluded or subject to limitations*.

"We" cover direct physical loss to covered property at a "covered location" caused by a covered peril.

\*\*\*\*

**BUSINESS PERSONAL PROPERTY**

\*\*\*\*

g.   personal property of others.   This means personal property of others that is in "your" care, custody, or control.

Personal property of others includes property that is sold under an installation agreement where "your" responsibility continues until the property is accepted by the buyer.

"Our" payment for loss to personal property of others will only be for the benefit of the owners of the personal property.

Contract, DE 1-1 at Page 58 of 130 (italics added).   In its "**ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS**" section, the Commercial Output Program lists several kinds of property for which there are no coverage, including:

9.   **Personal Property in the Open** -- "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

This exclusion does not apply to "mobile equipment" or to property in the custody of carriers for hire.

*Id.* at Page 74 of 130.   The Commercial Output Program defines "mobile equipment" as:

    a.    contractors' equipment or similar equipment of a mobile or floating nature;

    b.    self-propelled vehicles designed and used primarily to carry mounted equipment; or

    c.    vehicles designed for highway use that are unlicensed and not operated on public roads

*Id.* at Page 54 of 130.

## LEGAL STANDARD

"Under Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"   *Pepper v. Prime Rate Premium Finance Corp.*, No. 1:17-cv-03871-MLB, 2019 WL 6272874, at *2 (N.D. Ga. Nov. 25, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).   "[T]he court need not accept as true any legal conclusions couched as factual allegations." *Id.*   "The court's 'duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations.'"   *Id.* (alterations in original) (quoting *Griffin Indus., Inc. v. Irwin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007)).

"Although ordinarily nothing beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to his motion to dismiss." *Id.* at \*3 (alteration in original) (quoting *Bryant v. Citigroup, Inc.*, 512 F. App'x 994, 995 (11th Cir. 2013)).   "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim.'" *Id.* (alteration in original) (quoting *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

## ARGUMENT

Plaintiff cannot recover because its loss was to "personal property in the open caused by rain, snow, ice, or sleet" and is thus "**PROPERTY NOT COVERED**" under the parties' Contract.  Because the parties expressly agreed that Allied World would not pay any benefits for such loss, Allied World cannot be held liable for breach of contract for declining Plaintiff's request for benefits for damage to the RVs in the open caused by rain and snow.  Because there is no coverage for the RVs, Allied World cannot be held liable for bad faith for declining Plaintiff's request for benefits.  As Plaintiff cannot establish that it is entitled to benefits for the RVs, its Complaint must be dismissed with prejudice.

126155898.1

**I.      As the Contract Provides No Coverage for RVs in the Open Caused by Rain and Snow, Allied World Has Not Breached the Contract.**

Because the parties agreed in the Contract that Allied World would not provide coverage for loss to personal property in the open caused by rain or snow, it has not breached the Contract by refusing to provide benefits for damage to RVs in the open caused by rain and snow.  DE 1-1, Contract, Page 52 of 130 ("In return for 'your' payment of the required premium, 'we' provide the coverage described herein subject to all the 'terms' of the Commercial Output Program.").

Under Georgia law, insurance policies are written contracts and, therefore, are subject to the standard rules of contract construction.  *See Dixon v. Midland Ins. Co.,* 168 Ga. App. 319, 322, 309 S.E.2d 147, 150 (1983).  The interpretation of an insurance policy is a question of law for the Court to resolve.  O.C.G.A. § 13-2-1.  "[I]n construing an insurance policy, a court must first decide whether the language is clear and unambiguous."  *Club Libra, Inc. v. R.L. Kine Props., LLC*, 324 Ga. App. 547, 548, 751 S.E.2d 418, 419 (2013) (internal quotations omitted). Ambiguity only exists when "more than one reasonable construction may be placed upon the language of an agreement."  *Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 76, 746 S.E.2d 698, 702 (2013) (citations omitted).  If the insurance policy is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning."  *Club Libra*, 324

Ga. App. at 548, 751 S.E.2d at 419 (citations omitted).  As stated by the Georgia

Court of Appeals:

> Where an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court. . . . [I]f the policy exclusions are unambiguous they must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

*First Specialty Ins. Corp. Inc. v. Flowers,* 284 Ga. App. 543, 545, 644 S.E.2d 453,

455 (2007) (internal quotation and citation omitted).

Here, the loss to the RVs is excluded under the Contract by the "**Personal**

**Property in the Open**" exclusion:

> "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

Contract, DE 1-1, Page 74 of 130.

It cannot reasonably be disputed that the RVs were "in the open" at the time

of the loss.  As reflected in the appraisal report relied on by Plaintiff, the sole

buildings on the Property at the time of the loss were "two temporary office

buildings" while the "remainder of the property is used *for open storage* of travel

trailer units."  **Exhibit C** (Appraisal Report) at 4 (italics added).  As seen in the

photo set forth above, the two office buildings are plainly too small to house any of

the damaged RVs, *see supra* at 3, and the photo of the damaged RVs submitted by

Plaintiff, as part of its claim, reflects that the RVs were in the open at the time of loss:



**Exhibit E.**

The loss to the RVs in the open was caused by rain and snow.  As reported by the Plaintiff in its Property Loss Notice submitted to Allied World: "Rain cause two office bldgs to wash away.  Property of others lost or damaged." **Exhibit A** at 1.  In the appraisal report relied on by Plaintiff, the appraiser stated, "On February 7, 2020, the Umatilla River behind the property became inundated with water and overflowed the riverbanks and flooding the surrounding area.  This inundation was caused by ongoing heavy rainfall in the area and snow melt from the surrounding topography." **Exhibit C** at 5.

The rain referenced by Plaintiff and the appraisal report relied on by Plaintiff is confirmed in reports by NOAA:

> Heavy snow on February 4-5, 2020 was followed by a period of heavy
> rain, February 5-7.  Snow levels rose to near 5000 feet.  The heavy

> rain and snow melt lead to moderate flooding and several landslides along the East Slopes of the Washington Cascades. There was record flooding on several rivers, including the Umatilla.
>
> ****
>
> The streams and rivers continued the rapid rises through the day of February 6th, with the Umatilla River reaching record high water levels at the gaging sites near Gibbon and at Pendleton…
>
> ****
>
> Most rivers and streams crested overnight on February 6th or on the morning of February 7th.

NOAA, Storm Information for Pendleton, Oregon.[4]  In short, the flooding at issue was melted "heavy snow" and "ongoing heavy rainfall."

Plainly, the loss to the RVs in the open was caused by rain and snow, as the flooding was itself rain and snow and because the flooding would not have happened but for the rain and snow.   As such, benefits are excluded by the "**Personal Property in the Open**" exclusion expressly agreed to by the parties absent application of one of its exceptions:

> This exclusion does not apply to "mobile equipment" or to property in the custody of carriers for hire.

Contract, DE 1-1, Page 74 of 130.

---

[4] *Available at* https://www.ncdc.noaa.gov/stormevents/eventdetails.jsp?id=871973.

If Plaintiff contends that the RVs were "in the custody of carriers for hire," then there is no coverage for the RVs because the RVs are "**PROPERTY NOT COVERED**" through the "**Property of Others**" provision of that section:

14. **Property of Others** -- "We" do not cover property of others for which "you" are responsible as:

    a. *a carrier for hire*; or

    b. an arranger of transportation.  This includes carloaders, consolidators, brokers, freight forwarders, or shipping associations.

*Id.* at Page 60 of 130 (italics and underlines added).

The RVs are not "mobile equipment" because none of the following subsections are applicable to the RVs:

    a.    contractors' equipment or similar equipment of a mobile or floating nature;

    b.    self-propelled vehicles designed and used primarily to carry mounted equipment; or

    c.    vehicles designed for highway use that are unlicensed and not operated on public roads

*Id.* at Page 54 of 130.  Subsection b. does not apply because the RVs are not "self-propelled" but rather travel trailers that are towed by a self-propelled vehicle:



-14-

**Exhibit D** (Appraisal Photos) at 8.  As reflected in the pictures, the RVs are also not primarily used to carry mounted equipment, but rather used for recreation. Subsection c. of "mobile equipment" does not apply because the RVs are licensed and operated on public roads:



**Exhibit D** (Appraisal Photos) at 7.

Subsection a. does not apply because the RVs are not "contractors' equipment."  The Contract defines "contractors' equipment," in pertinent part, as "machinery, equipment, and tools of a mobile nature that [Plaintiff] use in [its] contracting, installation, erection, repair or moving operations or projects."  DE 1-1 at Page 109 of 130.  Plaintiff alleges that the RVs "were being stored by Bennett on behalf of their owner, Keystone RV Company ("Keystone"), for subsequent

126155898.1

delivery to a dealership."  Complaint, DE 1-1 ¶ 14.  Thus, because the RVs were being stored for delivery to a dealership, and not for any contracting work by Plaintiff, they are not "contractors' equipment."

The RVs are also not "similar equipment of a mobile or floating nature." The RVs, unlike tools, machines, and equipment typically used by contractors, cannot be carried by hand, and there is no allegation that the RVs float.  Rather, the RVs are recreational vehicles used by individual consumers for comfort and leisure in travel:



**Exhibit D** (Appraisal Photos) at 10.   Accordingly, the RVs are not "mobile equipment."

For all of these reasons, there is no coverage under the Contract for the loss to the RVs in the open caused by rain and snow.  As such, Allied World is not in breach of the Contract, and Plaintiff can allege nothing that will change the fact

that the loss to the RVs in the open was caused by rain and snow.  Accordingly,

Plaintiff's Complaint should be dismissed with prejudice.

## II.     Because There is No Coverage, There is No Bad Faith.

In order to recover damages for an insurer's alleged bad faith refusal to pay,

there must first be "a loss which is covered by a policy of insurance."  O.C.G.A.

§ 33-4-6.  Thus, in the absence of coverage, there can be no finding of bad faith.

*State Farm Fire & Cas. Co. v. Diner Concepts, Inc.*, 370 F. App'x 56, 58 (11th

Cir. 2010); *Moon v. Cincinnati Ins. Co.*, 975 F. Supp. 2d 1326, 1332 (N.D. Ga.

2013); *see also BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18,

19 (2007) ("To prevail on a claim for an insurer's bad faith under OCGA § 33–4–

6, the insured must prove…that the claim is covered under the policy.").

Here, where there is no coverage for the RVs because the loss was caused

by rain and snow to the RVs in the open, a risk that the parties expressly agreed

was not covered under the Contract, there can be no finding of bad faith.  Thus,

Plaintiff's bad faith claim must be dismissed.

## CONCLUSION

Allied World is not in breach of the parties' Contract because the parties

agreed that loss to personal property in the open caused by rain and snow was not

covered under the Contract, and Plaintiff's claimed loss is to RVs in the open

caused by rain and snow.  As such, Allied World did not break any contractual promise by declining to pay the benefits requested by Plaintiff.  Because the Contract does not provide the benefits requested by Plaintiff, Allied World cannot be held liable for bad faith denial of those benefits.  No amendment by Plaintiff will change the fact that the claimed loss is to RVs in the open caused by rain and snow.  Accordingly, Plaintiff's Complaint must be dismissed with prejudice.

Respectfully submitted this 2nd day of June, 2021.

**CARLTON FIELDS  P.A.**

By:  */s/ Jason A. Morris*
    Jason A. Morris
    Georgia Bar No. 608298
    Heidi H. Raschke
    Georgia Bar No. 594937
    1201 West Peachtree Street, Suite 3000
    Atlanta, Georgia  30309-3455
    (404) 815-3400
    (404) 815-3415 (fax)
    Email:  jmorris@carltonfields.com
        hraschke@carltonfields.com

*Attorneys for Defendant Allied World Specialty Insurance Company*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been

prepared with Times New Roman, 14 point.

<div align="right">

*/s/ Jason A. Morris*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 2, 2021, I served a true and correct copy of the foregoing document via the CM/ECF system, which will automatically serve all counsel of record.

<div align="center" style="margin-left:auto">

*/s/ Jason A. Morris*

Jason A. Morris

</div>