## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Bennett International Group, LLC,

　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　Case No. 1:21-cv-2190-MLB

Allied World Specialty Insurance
Company,

　　　　　　　　Defendant.

_____/

## OPINION & ORDER

Plaintiff Bennett International Group, LLC sued Defendant Allied World Specialty Insurance Company claiming breach of contract and bad faith under O.C.G.A. § 33-4-6. (Dkt. 1-1.) Defendant moves to dismiss. (Dkt. 3.) Plaintiff moves to file a surreply. (Dkt. 11.) The Court denies both motions.

## I.    Background

In February 2020, Plaintiff was storing 25 travel trailers for a customer at its facility in Pendleton, Oregon. (Dkt. 1-1 at ¶¶ 13-14.) On February 7, 2020, a nearby river flooded Plaintiff's property and damaged

the trailers.  (*Id.*)  Plaintiff had the trailers inspected and determined they were a total loss with a value of $481,387.00.  (*Id.* at ¶¶ 18-19.) Plaintiff paid its customer for the trailers.  (*Id.*)

At the time of the flood, Plaintiff had an insurance policy with Defendant.  (Dkt. 1-1 at 4.)  The Policy provides that "in return for the payment of the premium, and subject to all the terms of this policy, [Defendant] agree[s] with [Plaintiff] to provide the insurance as stated in this policy."  (*Id.* at 12.)  Plaintiff filed a claim with Defendant under to Policy for the money it paid its customer.  Defendant denied the claim. (*Id.*)  Plaintiff asked for reconsideration on several occasions, which Defendant refused.  (*Id.*)  Plaintiff's counsel sent Defendant a demand letter.  (*Id.* at 9.)  Defendant's counsel responded and, again, denied the claim.  (*Id.*)  On April 15, 2021, Plaintiff filed suit alleging (1) breach of contract and (2) bad faith and attorneys' fees under O.C.G.A. § 33-4-6. (*Id.* at 7–11.)

Defendant moves to dismiss pursuant to Rule 12(b)(6).  (Dkt. 3.) Plaintiff moves for leave to file a surreply to address issues Defendant allegedly raised for the first time in its reply brief.  (Dkt. 11.)

## II.   Motion to File Surreply

### A.   Legal Standard

"Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (citation omitted).   Where a reply merely responds to arguments in the other party's response brief and "does not advance new arguments," or where the motion for surreply "does not specially identify [the other party's] new arguments," the Court will likely deny the motion for surreply.   *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1349 (N.D. Ga. 2017).

### B.   Discussion

Plaintiff contends a surreply is warranted to respond to Defendant's arguments about the existence of flood coverage and the application of the Policy's flood exclusion which Plaintiff argues were presented for the first time in Defendant's reply.   (Dkt. 11 at 1.)   But the Court finds Defendant did not raise new arguments.   Rather, Defendant directly

responded to the flood coverage argument Plaintiff raised in its opposition brief. (*See* Dkt. 5 at 11 ("It is clear, then, that [the Policy] contains flood coverage.").) *See Roelle v. Cobb Cnty. Sch. Dist.*, 1:13-CV-3045, 2014 WL 4457235, at *9 (N.D. Ga. Sept. 10, 2014) ("If the new arguments raised in a reply brief directly address arguments raised in the non-movant's response, no surreply is warranted.") The Court thus denies Plaintiff's motion for leave to file surreply.

## III.  Motion to Dismiss

### A.    Legal Standard

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This so-called "plausibility standard" is not a probability requirement. *Id.* Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556.

A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2004); *see also* Fed. R. Civ. P. 12(d). "But a court may consider exhibits attached to the complaint. And the exhibits a plaintiff attaches to its complaint governs when they contradict the allegations of the complaint." *Pepper v. Prime Rate Premium Fin. Co.*, No. 1:17-cv-03871, 2019 WL 6272874, at *3 (N.D. Ga. Nov. 25, 2019) (internal citation omitted). A district court

can also consider "documents referenced in the complaint, even if they are not physically attached, if the documents are central to the complaint and no party questions their authenticity." *Id.* A document is central if it is a "necessary part of [the plaintiff's] effort to make out a claim." *Day*, 400 F.3d at 1276; *see also Bryant v. Citigroup Inc.*, 512 F. App'x 994, 995 (11th Cir. 2013) ("Although ordinarily nothing beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to his motion to dismiss.")

## B.    Documents and Judicial Notice

Defendant asks the Court to consider a property loss notice (Dkt. 3-1), May 21, 2020 Disclaimer Letter (Dkt. 3-2), February 24, 2020 Appraisal Report (Dkt. 3-3), Appraisal Photos (Dkt. 3-4), Plaintiff's Picture of Travel Trailers (Dkt. 3-5), and the National Oceanic and Atmospheric Administration ("NOAA") Website, Storm Information for Pendleton, Oregon (Dkt. 3 at 3). (*Id.* at 2–5.) As noted above, a court may consider a document attached to a motion to dismiss if it is (1) referred to in the complaint and (2) central to the plaintiff's claim.

*Bryant*, 512 F. App'x at 995. "A document is central to the plaintiff's case if the plaintiff would have to offer the document to prove his case." *Black v. Bank of Am., N.A.*, No. 1:15-cv-2339, 2016 WL 11569315, at *7 (N.D. Ga. July 13, 2016).

Plaintiff argues the loss notice, appraisal report, appraisal photographs, and Plaintiff's picture of travel trailers are either not referred to in the complaint or not central to Plaintiff's claims. (Dkt. 5 at 3–6.)  While Defendant disagrees with Plaintiff's opposition to consideration of the loss notice, appraisal report, and appraisal photographs, Defendant "respectfully states that the Court need not consider those documents because Plaintiff does not contest that melting rain and snow caused the Umatilla River to flood which led to the loss of the RVs, the reason [Defendant] cited the documents in the first place." (Dkt. 10 at 13–14.)  As to Plaintiff's picture of the travel trailers, Defendant also states, "because Plaintiff concedes that snow and rain cause the Umatilla River to flood which led to the loss of the RVs, the Court need not consider [the picture] to find that the loss is excluded." (*Id*. at 13 n.3.)  The Court thus will not consider any of these documents.

As to the NOAA website, the Court may take judicial notice of the contents of federal agency websites because the "accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Stafford v. Grifols Int'l S.A.*, No. 1:18-CV-321, 2019 WL 3521957, at *2 n.4 (N.D. Ga. Feb. 25, 2019) (taking judicial notice of U.S. Department of State website); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 452 n.2 (N.D. Cal. 2019) (taking judicial notice of two NOAA webpages). The Court will thus take judicial notice of the webpage.

## C.   Breach of Contract

Plaintiff sued Defendant for breach of contract. (Dkt. 1-1 at 7–8.) To state such a claim, a plaintiff in Georgia must allege three elements: (1) the parties had a contract, (2) which the defendant breached, and (3) the plaintiff suffered damages. *Law Officers of Robert R. Pagniello, P.C. v. Amguard Ins. Co.*, No. 1:20-CV-2714, 2020 WL 8182214, at *2 (N.D. Ga. Sept. 18, 2020) (internal quotation marks omitted). Defendant moves to dismiss claiming the Policy does not cover the flood damage to the travel trailers. Defendant advances three arguments in support of its motion to dismiss.

Defendant contends the Policy specifically excludes coverage for flood damage. (Dkt. 10 at 4–5.) In making this argument, Defendant cites a provision stating the Policy does "not pay for loss caused by flood." (Dkt. 10 at 7 (citing Dkt 1-1 at 70).) That provision appears in the portion of the Policy entitled "Commercial Output Program Property Coverage Part." (Dkt. 1-1 at 52.) It starts with a section entitled "Agreement" that states "in return for [Plaintiff's] payment of the premium, [Defendant] will provide the coverage described" in the Commercial Output Program. (*Id.*) That would seem to favor Defendant, since the Commercial Output Program excludes coverage for flood damages. But, immediately after the above-quoted language the Commercial Output Program states "[t]his coverage is also subject to the 'schedule of coverages.'" (*Id.*) The schedule of coverages includes a detailed list of the items covered under the policy, the extent of coverages, and many other particulars. It has a section entitled "Flood Coverage" with boxes labeled "Not Covered," "Scheduled Flood Coverage," and "Blanket Flood Coverage." (*Id.* at 5, 35.) The box for "Scheduled Flood Coverage" was selected. (*Id.* at 35.) It also states that the "catastrophe limit" for flood coverage is $1,000,000 and that the flood deductible can be found in the deductible endorsement.

(*Id.*)  The schedule of coverages thus unequivocally provides $1 million in flood coverage.

Under Georgia law insurance policies must be read *in pari materia*. *Martin v. Massachusetts Mut. Life Ins. Co.*, 686 F. App'x 639, 643 (11th Cir. 2017).  This means

> the insurance policy is construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement or application made a part of the policy. When the language in an endorsement or rider conflicts with the policy, the rider controls.

*Id.* (internal citations and quotation marks omitted); *see also B. L. Ivey Const. Co. v. Pilot Fire & Cas. Co.*, 295 F. Supp. 840, 848 (N.D. Ga. 1968) ("[I]t is a general principle of wide application in Georgia that when an endorsement or rider and a policy conflict, the former controls the latter, since it is a later expression of intent.").

While the Policy excludes flood coverage in the Commercial Output Program provision, the Policy also includes the schedule of coverages that contains an endorsement adding flood coverage.  That endorsement supersedes the language of the flood exclusion.  It does so, not only by operation of Georgia law, but also pursuant to the plain language of the

Coverage Output Program, which states it is subject to the schedule of coverages.  The Court rejects Defendant's first argument.

Defendant next refers to a subsection of the Commercial Output Program entitled "Additional Property Not Covered or Subject to Limitations," specifically a provision stating:

> **Personal Property in the Open** – "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.
>
> This exclusion does not apply to "mobile equipment" or to property in the custody of carriers for hire.

(*Id.* at 74.)  Defendant says this provision precludes the loss at issue here since the trailers were in the open and were damaged by excessive rain and snow melt.  (Dkt. 3 at 9.)  Plaintiff disagrees and points to another provision in the Commercial Output Program that defines "Flood" to mean "flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not."  (Dkt. 1-1 at 54.)

Under Georgia law, insurance contracts "are interpreted by ordinary rules of contract construction." *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998).  The "[c]onstruction and interpretation of an insurance contract are matters of law for the court." *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707,

710 (Ga. Ct. App. 2011). "The cardinal rule of contractual construction is to ascertain the intent of the parties." *Knott v. Knott*, 589 S.E.2d 99, 101 (Ga. 2003) (citing O.C.G.A. § 13-2-3). Contract interpretation requires three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*City of Baldwin v. Woodard & Curran, Inc.*, 743 S.E.2d 381, 389 (Ga. 2013).

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed." *Brogdon v. Pro Futures Bridge Cap. Fund, L.P.*, 580 S.E.2d 303, 306 (Ga. Ct. App. 2003). In that analysis, "[w]ords generally [are ascribed] their usual and common signification." O.C.G.A. § 13-2-2(2). An insurance contract is considered ambiguous "only if its terms are subject to more than one reasonable interpretation." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009) ("The

policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney."). Put another way, "[w]here the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." *Boardman*, 498 S.E.2d at 494. Although the insurance contract should "be read in accordance with the reasonable expectations of the insured where possible," *id.*, the Court has no more right to afford the contract a "strained construction to make the policy more beneficial by extending the coverage contracted for than [it] would have had to increase the amount of the insurance." *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 426 (Ga. 2016); *see also Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939, 495 F. Supp. 3d 1289, 1293 (N.D. Ga. Oct. 6, 2020) ("Georgia courts will not strain to extend coverage where none was contracted or intended." (internal quotation marks omitted)); *Staton*, 685 S.E.2d at 265–66 ("[T]his court may not strain the construction of the policy so as to discover an ambiguity. . . . [T]he rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists.").

Even if a court finds the contract ambiguous, a jury question does not automatically arise. *See Envision Printing, LLC v. Evans*, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016). Instead, the court must first apply the rules of construction to resolve the ambiguity. *Id.* To that end, "[e]nforcement of the parties' intent is superior to the other rules of construction." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 820 (11th Cir. 1999). Courts also analyze the contract as a whole and interpret it to give the greatest effect possible to all provisions and avoid rendering any provisions meaningless. *See Young v. Stump*, 669 S.E.2d 148, 150 (Ga. Ct. App. 2008). Any "ambiguities in the contract are strictly construed against the insurer as drafter of the document." *Boardman*, 498 S.E.2d at 494.

As explained, Plaintiff says the trailers were damaged when the Umatilla River overflowed its banks, a covered loss under the definition of "Flood." Defendant acknowledges the damage to the travel trailers was caused by the Umatilla River "overflow[ing] its riverbanks." (Dkt. 3 at 12.) Defendant, however, contends that the river did this because of rain and snow, thus precluding coverage under the rain and snow exclusion. (*Id.* at 13.) Plaintiff contends this interpretation is

14

unreasonable given the flood coverage provided by the Policy and the lack of any reference to flood in the rain and snow exclusion. (Dkt. 5 at 13–14.) Plaintiff claims the more reasonable interpretation is that the rain and snow exclusion applies to property left outside and damaged by the elements, such as *falling* rain and snow. (*Id.* at 14.) It argues, if Defendant wished to take flood coverage away by the subject exclusion, it would have specifically referenced damage caused by floods. (*Id.*)

The Court concludes the language is unambiguous and provides coverage for the damage caused by the flooding of the Umatilla River. The Policy defines "Flood" (a covered loss) to include the "overflow of a body of water [] whether caused by wind or not." (Dkt. 1-1 at 54.) The Umatilla River is a body of water. It overflowed, that is, left its banks and flooded Plaintiff's location. By its clear terms, the policy covered damage caused by the river exceeding its banks and damaging Plaintiff's property. The exclusion Defendant relies upon refers to damage to property "in the open caused by rain, snow, ice or sleet." The inclusion of the words "in the open" was clearly meant to exclude losses due to rain, snow, ice, or sleet that fell from the sky onto Plaintiff's personal property, thereby damaging it. That is its plain meaning. Otherwise, why identify

the property as that "in the open."  It was not intended to exclude damages for rain that fell—not on property left in the open—somewhere else, flowed across some other land into the river, combined with rain from all over the place, and caused the river to overflow.  Rivers carry water.  Most (or perhaps all) of that water comes from rain and snow.  To say that damage from an overflowing river is excluded if that body of water contains rain water would completely due away with the flood coverage.  And finally, the definition of "Flood" states that it includes the overflowing of a body or water "whether driven by wind or not."  That means whether the overflow is caused by wind or another cause.  It does not exclude overflows caused by rain.  The Court concludes the plain language of the term "Flood" includes the overflowing of a river as a result of rain.  Defendant's tortured reading of the rain and snow exclusion is inconsistent with that provision's plain meaning.

Even if the Court were to conclude the rain and snow exclusion was somehow ambiguous and susceptible to either party's interpretation, that would not change the result.  When an exclusion is susceptible to two reasonable interpretations and is thus ambiguous, a court applies three well-known rules:

> any ambiguities in the contract are strictly construed against
> the insurer as drafter of the document; any exclusion from
> coverage sought to be invoked by the insurer is likewise
> strictly construed; and the insurance contract is to be read in
> accordance with the reasonable expectations of the insured
> where possible.

*Am. Strategic Ins. Corp. v. Helm*, 759 S.E.2d 563, 567 (Ga. Ct. App. 2014).

Under these rules, the Court alternatively construes the exclusion

against Defendant and not to exclude coverage from flooding caused by

rain.

Finally, Defendant argues that, even if there is flood coverage, the

loss to the RVs was *caused* by rain and snow, so coverage is excluded

under the efficient proximate cause doctrine.  (Dkt. 10 at 1.)  "The

efficient proximate cause doctrine applies when two or more identifiable

causes contribute to a single property loss-at least one of them covered

under the policy and at least one of them excluded under the policy."

*Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1260 (N.D. Ga. 2003).

> The doctrine of efficient proximate cause governs situations
> where a risk specifically insured against sets other causes in
> motion in an unbroken sequence between the insured risk and
> the ultimate loss. In such situations, the insured risk is
> regarded as the proximate cause of the entire loss, even if the
> last step in the chain of causation was an excepted risk. When
> an insured can identify an insured peril as the proximate
> cause, then there is coverage even if subsequent events are
> specifically excluded from coverage.

17

*Id.* (internal citation omitted). Under an efficient proximate cause analysis, the question becomes whether a covered event is the efficient and proximate cause of the plaintiff's loss even though an excluded event contributed to the loss as well. *See id.* at 1361.

As explained above, the Court concludes the excluded event (rain or snow falling on property left in the open) is not the cause of the loss at issue. The proximate cause (indeed sole proximate cause) was the overflow of the Umatilla River and that was a covered event. This is not a situation in which two events—one covered and one not covered—caused the loss. The efficient proximate cause doctrine is thus inapplicable. And, as also explained above, to the extent this language is in any way ambiguous, the Court will strictly construe it against Defendant. *See Young*, 669 S.E.2d at 150; *Helm*, 759 S.E.2d at 567. That would lead to the same outcome, a determination the rain and snow provision does not exclude a flood caused by rain and snow falling other than on personal property left in the open. So again, the efficient proximate cause doctrine does not apply.

For all of these reasons, the Court denies Defendant's motion to dismiss Plaintiff's breach of contract claim.

**D.    Bad Faith**

Plaintiff also files a claim of bad faith.  (*Id.* at 8–11.)  To prevail on a claim of bad faith under O.C.G.A. § 33-4-6, "the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."  *Auto-Owners Ins. Co. v. Hale Haven Props., LLC*, 815 S.E.2d 574, 585 (Ga. Ct. App. 2018).  Thus, to recover damages, there must be "a loss which is covered by a policy of insurance."  O.C.G.A. § 33-4-6; *see State Farm Fire & Cas. Co. v. Diner Concepts, Inc.*, 370 F. App'x 56, 58 (11th Cir. 2010) (in the absence of coverage, there can be no finding of bad faith); *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) ("To prevail on a claim for an insurer's bad faith under OCGA § 33-4-6, the insured must prove . . . that the claim is covered under the policy." (footnote omitted)).  Defendant argues "[b]ecause there is no coverage for the RVs, [it] cannot be held liable for bad faith for declining Plaintiff's request for benefits."  (Dkt. 3 at 9, 17.)  Because the Court finds there is coverage, the Court denies Defendant's motion as to Plaintiff's bad faith claim.

## IV.  Conclusion

The Court **DENIES** Plaintiff's Motion for Leave to File Surreply. (Dkt. 11.)

The Court **DENIES** Defendant's Motion to Dismiss.  (Dkt. 3.)

**SO ORDERED** this 10th day of January, 2022.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE